*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* COOK/CHANEY, Minors.

UNPUBLISHED
May 15, 2026
9:20 AM

No. 377177
Eaton Circuit Court
Family Division
LC No. 18-019963-NA

Before: KOROBKIN, P.J., and RIORDAN and MARIANI, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating his parental rights to his minor child, BC, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and (j) (reasonable likelihood of harm if returned to parent). We affirm.

## I. BACKGROUND

This case began in March 2024 following the emergency removal of BC and his half-brother, RC, from their parents' care.[1] At the time, the children were living with their mother and RC's father, and respondent's whereabouts were unknown. In its petition seeking jurisdiction and continued removal of the children, the Department of Health and Human Services (DHHS) alleged, in relevant part, that respondent was an absent parent, as he had had no contact with BC for a significant period and could not be located by Children's Protective Services (CPS) investigators at that time. After conducting emergency-removal and preliminary hearings, the court authorized the petition and continued the children's removal from their parents' care. Following an adjudication bench trial in June 2024, the court assumed jurisdiction over the children and ordered DHHS to engage in reasonable efforts toward reunification. At the initial dispositional hearing, the court ordered the parents to comply with a case service plan (CSP) provided by DHHS, which

---

[1] BC and RC have the same mother but different fathers. The children's mother and RC's father were also respondents in the proceedings below and their parental rights were terminated by the trial court's order, but neither are involved in this appeal.

required them to participate in and benefit from offered services to address concerns regarding their mental health, substance use, parenting skills, housing, and employment.

Respondent was not present at any of the hearings for the first several months of the case, including the adjudication trial and the initial dispositional hearing. At each hearing, respondent's counsel, CPS investigators, and caseworkers consistently reported that, despite their best efforts, they had been unable to locate, contact, or communicate with respondent.[2] DHHS was ultimately unable to locate respondent until after he was arrested on criminal charges in September 2024.[3] While he was in jail and then prison, respondent consistently attended hearings and participated in some of the limited services available to him during that time, including a substance-abuse treatment program, individual therapy, and video and phone visitations with BC.

In June 2025, DHHS filed a supplemental petition requesting termination of respondent's parental rights. Following a termination hearing, the trial court found that clear and convincing evidence established grounds for termination of respondent's parental rights and that a preponderance of the evidence established that termination was in BC's best interests. The trial court thereafter issued an order terminating respondent's parental rights as previously described. This appeal followed.

## II. ANALYSIS

On appeal, respondent does not challenge the trial court's statutory-grounds or best-interests determinations underlying its decision to terminate his parental rights and, instead, only challenges the court's determination that DHHS made reasonable efforts toward reunification.

Because respondent did not object below to his CSP or the adequacy of the services provided, this issue is unpreserved for appellate review. See *In re Atchley*, 341 Mich App 332, 337-338; 990 NW2d 685 (2022). We review unpreserved issues for plain error affecting substantial rights. *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020).

To obtain appellate relief under the plain-error standard of review, a respondent first must show: (1) an error occurred, (2) the error was clear or obvious, and (3)

---

[2] These efforts included routinely requesting updated address information from the United States Post Office; mailing documents to respondent's last known address; interviewing respondent's friends and relatives; contacting the Friend of the Court; requesting searches from the Office of Child Support; checking state and federal correctional systems; contacting directory assistance in other states; contacting MI Bridges; and conducting a work history searches. According to the caseworker, these efforts were consistent with DHHS's "absent parent protocol."

[3] Respondent was subsequently convicted by guilty plea and sentenced in January 2025 to 2 to 20 years' imprisonment. At the time of termination, respondent's earliest release date was September 22, 2026. At the time of writing this opinion, however, his earliest release date is June 21, 2028. See Michigan Department of Corrections (MDOC), Offender Tracking Information System <https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=747039> (accessed May 11, 2026). The underlying facts of the convictions are not relevant to this appeal.

the error affected substantial rights. Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings. After the respondent has satisfied these requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted when the plain, forfeited error seriously affected the fairness, integrity or public reputation of judicial proceedings. [*In re Berryman/Hurd/Morgan/Morgan-Hurd*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket Nos. 374775; 374776); slip op at 3-4 (quotation marks and citations omitted).]

In general, when a child is removed from a parent's custody, DHHS must make reasonable efforts toward reunification except under certain, limited circumstances, and "[t]he mere fact of imprisonment is not one of them." *In re Dixon (On Reconsideration)*, 347 Mich App 337, 362; 14 NW3d 497 (2023); see also MCL 712A.19a(2). Reasonable efforts include creating a CSP "outlining the steps that both [DHHS] and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Matamoros*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371544); slip op at 4 (quotation marks and citation omitted). DHHS and the trial court must then continually review, update, and revise the CSP as needed throughout the proceedings to ensure that a parent has "a meaningful opportunity to comply with" it. *In re Mason*, 486 Mich 142, 156, 169; 782 NW2d 747 (2010). Alongside this responsibility, however, "exists a commensurate responsibility" on the parent to participate in the offered services. *Matamoros*, ___ Mich App at ___; slip op at 4 (quotation marks and citation omitted). "The adequacy of [DHHS's] efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *Id*. at ___; slip op at 4 (quotation marks and citation omitted).

Respondent's reasonable-efforts argument focuses on the efforts made by DHHS while he was in jail and prison. According to respondent, "because of [his] incarceration, very little was done by . . . DHHS towards trying to provide services." The record, however, belies this claim.

A caseworker testified that, upon being sent to jail, respondent was mailed copies of all documents relevant to the proceedings and to BC's well-being and that she discussed the case with respondent both in person and on the phone while he was in jail. The caseworker provided case management services to respondent throughout the case, and although she initially struggled to connect to the proper person, she repeatedly called the jail to determine what types of services were available to respondent while he was housed there. Respondent's caseworker also enrolled him in parenting classes and provided him with the corresponding parenting-education workbook, which he, according to the caseworker at the termination hearing, never completed and returned to her. See, e.g., *Dixon*, 347 Mich App at 362. The caseworker also set up and facilitated video parenting-time visits between respondent and BC while respondent was housed in the county jail.

Following sentencing in his criminal matter, respondent was transferred from the county jail to prison. The caseworker testified that at that point, she mailed case-related documents to respondent that he may not have received amidst the transfer and communicated with the prison to determine what services were available to him. She determined that a substance-abuse program, individual therapy, and a core cognitive intervention program were available to respondent in prison, and she recommended that he participate in those services, which he did. She also spoke to respondent's therapist about his participation and spoke to respondent multiple times in person, on the phone, and via video call to discuss the case. And although the caseworker was unable to

get video-based visits approved with the prison, she arranged and facilitated weekly phone calls between respondent and BC so that respondent could continue to participate in parenting-time visits.

On this record, it is clear that DHHS made reasonable efforts to ensure that respondent had a meaningful opportunity to participate in the services available to him while he was in jail and prison. See *Mason*, 486 Mich at 156, 169; *Matamoros*, ___ Mich App at ___; slip op at 4. And respondent, for his part, acknowledges in his appellate brief that "some attempts were made wherever possible by . . . DHHS to comply with the requirements of providing services" and that DHHS made referrals when possible and facilitated video and phone parenting-time visits with BC. Respondent goes on to claim that no services "were provided in reality," but he does not explain how, considering everything discussed above, DHHS did not make reasonable efforts to facilitate his participation in the services available to him. Nor does respondent identify what additional services DHHS could have reasonably provided under the circumstances.[4] Accordingly, respondent has failed to demonstrate any reversible error in the trial court's determination that DHHS made reasonable efforts toward reunification. See *Berryman/Hurd/Morgan/Morgan-Hurd*, ___ Mich App at ___, ___; slip op at 3-4; *Atchley*, 341 Mich App at 337-338.

Affirmed.

/s/ Daniel S. Korobkin
/s/ Michael J. Riordan
/s/ Philip P. Mariani

---

[4] Respondent does, however, briefly note various alternative dispositions of the case that he believes would have been preferable to termination of his parental rights: that the trial court "could have easily placed the case on hold" until he was released from prison; that "[a] long-term guardianship with [BC's] foster parents . . . would be the preferred outcome"; and that "[a]nother option would be to see if [RC's father] could be provided services and both [RC and BC] placed with him." To the extent respondent suggests that reversible error occurred with respect to these claimed alternatives, he has failed to meaningfully substantiate any such argument, leaving it inadequately presented for appellate review. See *In re Warshefski*, 331 Mich App 83, 87; 951 NW2d 90 (2020). Nor, from our review of the record, do we see apparent merit in such an argument.